## JOSEPHINE I. WARD v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

In Banc, November 25, 1925.

1. **NEGLIGENCE: Speed of Train.** Whether the speed of a railroad is negligent does not depend altogether upon its rate, but to some extent upon the circumstances; and a rate of speed may be negligent at common law although within the statutory speed limit.

2. ———: ———: **Circumstances: Obscure Track: Populous Community.** The railroad train was running at a speed of from forty to fifty miles an hour, in a thickly populated community, with stations not more than a mile apart; it came out of a deep cut, and rounded a curve in approaching a crossing where people were almost constantly passing; the crossing was obscured from view until the train was almost upon it, and it was impossible to slacken its speed before reaching it; it struck an automobile, attempting to cross at a public road crossing, whose driver could not see it until the front wheels of his car were upon the track. *Held*, that it was a question for the jury to determine whether the train was being run at a negligent speed.

3. ———: **Warning: Conflicting Evidence.** The place was a park or amusement resort, in a thickly inhabited community. The railroad track ran through a tunnel, which ended in a deep cut, distant about a thousand feet from the station, and at the near-by road crossing was laid on an embankment about fifteen feet above the surrounding country, and the road crossing approached the track on an incline until within five feet of the rails, and from there on was on a level with the track. Shrubs, trees and vegetation of various kinds along the side of the railroad obscured the view of travelers on the road and prevented them from seeing an approaching train until within a few feet of the track. The train was running forty to fifty miles an hour, and the engineer testified that he could not see the crossing, and could not see the automobile attempting to cross the track until he was within one hundred feet of the crossing. There was testimony to the effect that one would have to be within five or six feet of the rails before he could look up the track and see an approaching train. One hundred

to two hundred people were picnicing at the park, and a great many automobiles were crossing the track. There were seventeen stations between the city and the park, a distance of seventeen and a half miles, and trains passed very frequently, sometimes every few minutes. Several witnesses who were near when the automobile was struck testified to seeing the collision and heard no warning sound from the train as it approached. Several witnesses for plaintiff watched the train from the time it came out of the cut and rounded the curve until it struck the automobile, and testified they heard no whistle sounded or bell rung. One witness for plaintiff testified that the automobile approached within a very few feet of the track, hesitated a second and then went on; by the time it got on the track it was struck by the engine, and knocked to pieces. Two or three witnesses for defendant testified that the whistle was blown when the train came out of the cut. *Held*, that it was the unquestionable duty of defendant's employees in charge of the train to sound an adequate warning of its approach, and it was for the jury to say whether such warning was sounded.

4. ———: Matter of Law: Railroad Crossing: Duty to Stop and Look. Where some witnesses were where they could look up the track a thousand feet to a cut, out of which the train came on a curve, and others testified that it was impossible for the driver of an automobile, crossing the track at a public road crossing, to see up the track until he was within five or six feet of the rails, which would put the front wheels almost on the rail before he could see the approaching train, and the engineer testified that the train was running seventy feet per second and struck the automobile one and a half seconds after he saw it, and the driver hesitated a second within a very few feet of the track and then drove on, it cannot be held as a matter of law that the other occupant of the automobile was negligent, for the evidence fails to show that the driver saw the danger, or negligently failed to see it, or recklessly drove in front of the engine which he knew or should have known was dangerously near. Besides, it is not contended that the negligence of the driver, if it contributed to the injury, was imputable to the other occupant or relieved the defendant of liability to him, or his widow who is the plaintiff.

5. ———: Instruction: Length. An instruction otherwise unobjectionable will not be held erroneous merely because of its length.

6. ———: ———: Would Have Anticipated: Assumption of Fact. An instruction telling the jury that if they find from the evidence that the defendant had reasonable grounds to anticipate, and "in the exercise of ordinary care, its servants and employees, so operating the train over said crossing, would have anticipated the presence of persons and vehicles upon said crossing," does not, by the word "would," have the effect of telling the jury that if the trainmen had been exercising ordinary care they would have anticipated the

presence of persons on the crossing, thus assuming that they were negligent. It expresses a condition, and does not assume that the defendant was not in the exercise of ordinary care.

7. Negligence: Instruction: Timely Warning: Undefined. An instruction telling the jury that, if they found the hypothesized facts which would constitute a dangerous crossing, "then it became the duty of the engineer operating the train to exercise ordinary care to give timely warning of the approach of the train to said crossing," is not error because the word "timely" is not defined. A timely warning of an approaching train is a warning which, under given circumstances, is given in time for one who is warned to avoid being struck by it. And particularly is a failure to define the word no error, where the instruction does not authorize a verdict for plaintiff upon failure to give a timely warning, but merely sets forth the duty of defendant to give timely warning, and requires the jury to find that the defendant failed to give any warning at all before they can return a verdict for plaintiff.

8. ——: ——: Negligently Run: Assumption of Fact. An instruction that "if you further find that the defendant negligently run said train at a greater rate of speed than was reasonable" does not assume that the train was negligently run or that it was run at a speed greater "than was reasonable."

9. ——: ——: Comment: Unnecessary Facts. It is not comment upon the evidence for the instruction to require a finding of specific facts alleged, unless undue prominence is given to such facts and the jury is directed as to the weight to be given them. An instruction requiring the jury to find a great many facts presented by the evidence, but unnecessary to be specified therein, cannot be injurious to defendant, but simply puts an unnecessary burden upon plaintiff, and the detailing of them is not a comment.

10. ——: ——: Railroad Crossing: Failure to Warn Deceased Only: General Warning. An instruction predicating plaintiff's right to recover upon a finding that defendant "negligently failed to give warning" to plaintiff's deceased husband of the approach of said train to the railroad crossing, is not erroneous on the theory that it requires a finding that deceased was not warned and that a failure to warn him was negligence regardless of whether a general warning was given. No warning of the train's approach is adequate, or a protection to any likely to be struck by it, unless it is a warning to any one and every one who is about to cross the track in front of it.

11. ——: ——: Measure of Damages: Penalty: Compensation: Pecuniary Loss: Discretion of Jury. An instruction, in an action brought by the widow for the negligent killing of her husband, which tells the jury that "if you find for plaintiff you should allow her such a sum, not less than $2,000 and not more than $10,000, in the discretion of the jury, and in determining the

amount you will allow her you may take into consideration the pecuniary loss, if any, occasioned to plaintiff by the death of her husband, and in considering the subject of her pecuniary loss you may consider the additional burden, if any, falling upon her by reason of his death of supporting their minor children until they become of age," etc., does not direct the jury to assess plaintiff's damages, nor designate the sum to be allowed as compensation, but is strictly within the terms of the statute (Sec. 4217, R. S. 1919). Any verdict the jury could render, assessing a penalty, would have to be allowed plaintiff; and if defendant considered that the instruction authorized the jury to compensate plaintiff for the damages sustained and was therefore likely to mislead them, it should have asked an instruction more definitely defining the manner in which they should consider evidence showing her pecuniary loss and limiting their consideration of it to the infliction of a penalty. [Following Grier v. Railroad Co., 286 Mo. 523, and distinguishing Treadway v. United Railways Co., 300 Mo. 156.]

Corpus Juris-Cyc. References: **Appeal and Error**, 4 C. J., Section 2890, p. 918, n. 44. **Death**, 17 C. J., Section 183, p. 1316, n. 81; Section 223, p. 1342, n. 57 New; Section 239, p. 1353, n. 38 New. **Railroads**, 33 Cyc. p. 975, n. 50, 51; p. 976, n. 53; p. 1094, n. 67; p. 1108, n. 54, 56; p. 1109, n. 60; p. 1121, n. 19; p. 1137, n. 23, 24. **Trial**, 38 Cyc., p. 1651, n. 83; p. 1653, n. 14; p. 1666, n. 70 New; p. 1686, n. 50; p. 1687, n. 86 New; p. 1689, n. 28.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*James F. Green, H. H. Larimore, A. E. L. Gardner* and *M. U. Hayden* for appellant.

(1) The judgment in this case should be reversed for the reason that there is no evidence in the record which possesses any of the allegations of negligence in respondent's petition. The only allegations of negligence which were attempted to be proved were those with respect to the speed of the train, the failure to warn and the alleged obstructions. Evidence was introduced tending to establish that the train was running between forty and fifty miles an hour as it approached and passed over this road crossing, and there was evidence by some witnesses to the effect that those witnesses did not hear the sound of the whistle or bell as the train approached. (a) This accident did not occur within the limits of any incorporated city or village. It was, there-

fore, not negligence *per se* for appellant to operate its
train over this crossing or in the vicinity of it at a rate of
speed of forty to fifty miles an hour.    Powell v. Rail-
way Co., 76 Mo. 80; Wallace v. Railroad Co., 74 Mo. 594;
Maher v. Railroad, 64 Mo. 267; Rollison v. Railroad,
252 Mo. 537; McGee v. Railroad, 214 Mo. 541; Burge v.
Railroad, 244 Mo. 103.    (b)  The evidence of some
witnesses that they did not hear either bell or whistle
sounded on the engine of this train, as it approached the
crossing, is insufficient to establish the allegation of neg-
ligence for failure to warn, for the reason that there is
no evidence from these witnesses as to whether or not
they were in a position to hear either the bell or whistle
or whether they were paying sufficient attention to have
observed either, or both, or whether there was any other
noise around them precluding their hearing either or
both.    Furthermore, some  of  these  same  witnesses
testified that they heard the ''roar'' of the train as it
approached the crossing, in which event the failure to
sound the bell or whistle, if there had been such failure,
was not the proximate cause of the collision between the
train and the automobile, in which respondent's husband
was riding.  Rollison v. Railroad, 252 Mo. 525.  (2)  The
giving of Instruction 2 at the instance of respondent
was error warranting a reversal or this judgment.  This
instruction purported to cover the case for respondent
and, upon a finding of the facts therein hypothesized,
the jury were instructed to return a verdict in favor of
respondent.  The instruction was so long as to be use-
less as a guide to the jury.  It assumed as true, facts
which were in dispute.  It was broader than the allega-
tions of the petition and it was beyond the scope of the
evidence and it did not correctly inform the jury of the
law governing the conduct of one riding as a guest in an
automobile nor with respect to the negligence, if any,
of the driver of the automobile and the effect of such neg-
ligence.  Degonia v. Railroad, 224 Mo. 564; Hall v.
Coal Co., 260 Mo. 351; State ex rel. Coal Co. v. Ellison,
270 Mo. 645; State ex rel. Long v. Ellison, 272 Mo. 571;
Zini v. Term. Railroad Assn., 235 S. W. 86; Miller v.

Busey, 186 S. W. 983; Crow v. Railroad, 212 Mo. 589; Orris v. Railroad, 279 Mo. 1; Gott v. Railroad, 222 S. W. 827; Glaser v. Rothschild, 221 Mo. 180; Quirk v. Railway Co., 200 Mo. App. 585; Endy v. Lead Co., 220 S. W. 504; Cowan v. Brick Co., 222 S. W. 924. (3) The giving of Instruction 7 was reversible error. This instruction was upon the measure of damages and did not correctly inform the jury of the measure of damages, and authorized the jury to consider facts and circumstances which were wholly immaterial in the consideration of the question of respondent's damage. Grier v. Ry. Co., 286 Mo. 523; Lackey v. Rys. Co., 288 Mo. 144; Treadway v. Rys. Co., 300 Mo. 156; Academy v. Bobb, 52 Mo. 357; State v. Kavanaugh, 133 Mo. 452; Eickhoff v. Ry. Co., 106 Mo. App. 541; Dix v. Martin, 171 Mo. App. 266; State v. Macom, 186 S. W. 1157.

*Claude M. Crooks* and *Charles E. Morrow* for respondent.

(1) The demurrer to the evidence was properly refused. (a) The crossing in question was a traveled public road within the meaning of Sec. 9943, R. S. 1919. The defendant and the adjoining proprietors had unequivocally dedicated it and improved it for a road; the defendant had put up the usual road.crossing sign; the defendant maintained a station as well as a gravel platform at and over this crossing where passengers were received and discharged, for more than eight years; and the public had accepted the same by generally and continuously traveling over it for that length of time. On question of dedication: Board v. McPherson, 172 Mo. App. 374; Rose v. St. Charles, 49 Mo. 509; Naylor v. Harrisonville, 207 Mo. 348; Drimmel v. Kansas City, 180 Mo. App. 344. On question of amount and character of travel: Patton v. Forgey, 171 Mo. App. 1; Phelps v. Dockins, 234 S. W. 1022. (b) But even if the road in question was not a traveled public road within the meaning of the statute, the crossing was a public highway within the sense essential to impose upon

the defendant the common law of obligation to exercise ordinary care for .the safety of persons traveling over it by giving a signal by bell or whistle. Compton v. Railroad, 165 Mo. App. 297; Sites v. Knott, 197 Mo. 615; Owen v. Delano, 194 S. W. 756; Russell v. Railroad, 70 Mo. App. 95; Yoakum v. Ry. Co., 199 S. W. 263; 22 R. C. L. 'sec. 232. (c) Even if the crossing was a private one, the situation required the defendant to exercise ordinary care to give warning of the approach of the train. Wiese v. Ry. Co., 166 N. W. (Iowa) 66. The crossing was maintained for the mutual interest of the defendant and the adjoining proprietors. Lake .Erie Railroad Co. v. Fleming, 183 Ind. 511. (2) While it may be that it is not negligence *per se* for a railroad to run at any rate of speed in the country, under the circumstances of this case there was evidence tending to show that the defendant violated its common-law duty in running the train at a greater rate of speed than was reasonable, having regard to the time, place and circumstances. Montague v. Railroad, 264 S. W. 813; Shaffer v. Railroad, 254 S. W. 257; Holden v. Railroad, 177 Mo. 456; 22 R. C. L. sec. 189; 33 Cyc. 921. (3) Instruction 2 is within the purview of both the pleadings and the evidence. (a) It does not assume that the defendant's employees did not exercise ordinary care to anticipate persons on the crossing. (b) It is not erroneous in stating that if the jury found the facts required then it became the duty of the engineer to exercise ordinary care to give timely warning of the approach of the train to the crossing. Shaffer v. Ry. Co., 254 S. W. 257; Yoakum v. Ry. Co., 199 S. W. 263; Louisville Ry. Co. v. Morgan, 174 Ky. 633; Kerr v. Bush, 215 S. W. 398. Even if the instruction does not correctly state defendant's duty in this respect, it required the jury to find that defendant failed to give any warning by bell or whistle, and is sufficient. Garard v. Coal Co., 207 Mo. 242; Bradley v. Ry. Co., 138 Mo. 293. (c) The instruction does not contain an unwarranted comment upon the evidence tending to establish a user of the crossing. (d) It does not assume that the engine was

running at a greater rate of speed than was reasonable, but requires the jury to find that fact and also that in so doing the defendant and its engineer failed to exercise ordinary care.   (4)   There were two assignments of negligence submitted to the jury in Instruction 2, and the jury were required to and by its verdict did find the defendant guilty of negligence in both respects. Even if one of the assignments of negligence was not proven or incorrectly submitted in the instruction, if the other assignment was proven and is correctly susmitted in the instruction, it does not constitute reversible error.   McIntire v. Ry. Co., 286 Mo. 252; McKenzie v. Randolph, 257 S. W. 126; Moyer v. Railroad, 198 S. W. 842; Gibler v. Railroad, 129 Mo. App. 101; Jackson v. Railroad, 171 Mo. App. 443; Barker v. Lumber Co., 217 S. W. 588; Chambers v. Hines, 208 Mo. App. 331. (5)   Plaintiff's instruction on the measure of damages is correct.   Greer v. Railroad, 286 Mo. 523; Treadway v. U. Rys. Co., 300 Mo. 156; Lackey v. U. Rys. Co., 288 Mo. 120; R. S. 1919, sec. 4217.   Said instruction does not assume that an additional burden was cast upon plaintiff of supporting the minor children.

WHITE, J.—The plaintiff, in the Circuit Court of St. Louis County, sued for damages on account of the death of her husband, Albert Hesse, who was killed through the alleged negligence of the defendant in operating its train.   She recovered judgment June 7, 1922, for $8,000, and the defendant appealed.

Albert Hesse was killed July 7, 1921, while riding in a Ford automobile as the guest of one Otto C. Carpenter, when the latter drove across the tracks of defendant at a place called Lake Hill in St. Louis County.   Lake Hill, seventeen and one-half miles west of St. Louis, on the south side of the defendant's railway tracks, was an amusement resort, consisting of dancing and dining pavilions, swimming pool, lake for boating, stands and concessions.   Defendant maintained a station there where passengers sometimes were received and discharged.

A public highway, called Daugherty Ferry Road, runs parallel with the railroad tracks a short distance north of Lake Hill. A road runs south from Daugherty Ferry Road, and crosses the defendant's tracks at Lake Hill. There is some dispute as to the character of this road, but the defendant displayed a sign over it, "Railroad Crossing," and appellant's counsel in his brief admits that it was a public crossing of a highway over the railroad tracks. Carpenter, with Hesse, in his Ford car, was driving from the north on this road and, in attempting to cross the defendant's railroad track at Lake Hill, his car was struck by defendant's west-bound passenger train, and both the men were killed.

The railroad track at that point runs on an embankment about fifteen feet above the surrounding country. The road running south through Daugherty Ferry Road approached the tracks on an incline until within about five feet of the rails, where it was on a level with the track. East of Lake Hill the track of the defendant runs through a tunnel, which ends on the west in a deep cut. According to the measurements of the defendant, the distance of this cut from the crossing was 985 feet. After leaving the cut the track makes a sharp curve to the south, going west. There was much evidence showing that on the road along the right-hand side of defendant's track, next the crossing, were shrubs, trees, and vegetation of various kinds, such as to prevent sight of the railroad tracks and an approaching train, by anyone passing south on the road until within a very few feet of the track. The engineer in charge of the train testified that he could not see the crossing, and didn't see the automobile until he was within a hundred feet of the crossing. There was testimony to the effect that one would have to be within five or six feet of the rails before he could look up the track and see the approaching train. Photographs were introduced by the defendant to show the situation there, but it is not clear that any of the photographs were taken from the exact spot where the occupants of the automobile could look up the track. On Sundays and holidays a great many people resorted to

the park, and, on the day in which the accident occurred, there were from one hundred to two hundred people picnicing there. A great many automobiles were crossing the railroad track going to and from the park.. It was said that the north-and-south road was the only access to the park by automobile. There were seventeen stations between Lake Park and St. Louis, a distance of seventeen and one-half miles, and trains passed very frequently, sometimes every few minutes. Several witnesses who were near when the automobile was struck, testified to seeing the collision, and heard no warning sound from the train as it approached. One witness for plaintiff said that the Ford car approached within a very few feet of the track, hesitated a second and then went on; by the time it got on the track it was struck and knocked to pieces. The train was stopped about a quarter of a mile further west, and both men were then on the pilot, dead.

Evidence showed the train was going at from forty to fifty miles an hour; the engineer testified that it was running at the rate of forty-seven miles an hour. Two or three witnesses for defendant testified that the whistle was blown when the train came out of the cut. Several witnesses for plaintiff watched it from the time it came out of the cut until it struck the automobile, and they testified that they heard no whistle sounded, nor bell rung.

According to witnesses for plaintiff, an automobile, in crossing, would have to be so close to the track that the front wheels would be almost on the rails, before the driver could view the track any considerable distance to the east. The engineer testified that he knew Lake Hill. was a resort and he had seen crowds of people there, especially on Sundays and holidays; he knew there was a swimming pool there, and that people from the city daily visited the park; that for years he had given the signal whistles for that crossing. The Daugherty Ferry Road at that point was fifty feet north of the rails where the north-and-south road entered it, from the crossing.

Albert Hesse was twenty-eight years of age at the time of his death. He left a widow and four children,

the eldest eleven and the youngest three years of age. At the time of the trial his widow had married Mr. Ward, but was not living with him.

The case was submitted to the jury on two allegations of negligence: the excessive speed of the train, and failure to sound a warning of its approach.

I. Appellant claims that no negligence was shown, either in failure to sound a warning or in excessive speed. The plaintiff did not rely upon a failure to give the statutory warning, or upon any legal limit to the speed. Whether, under circumstances like this, the speed of the train is negligent does not depend altogether upon its rate, but to some extent upon the circumstances. A rate of speed may be negligent at common law while within the statutory speed limit. [Montague v. Railroad, 264 S. W. l. c. 816; Harrington v. Dunham, 273 Mo. l. c. 431.] Here the train was running in a thickly populated community with stations not more than a mile apart; it came out of a deep cut, had to round a curve in approaching the crossing where people were almost continually passing. The crossing was obscured from view until the train was almost upon it, and it was impossible to slacken the speed before reaching it. It was a question for the jury whether it was a negligent speed to run at a rate such as trains acquired in the open country.

That it was the duty of defendant's employees in charge of the train to sound an adequate warning of its approach there is no question, and it was for the jury to say whether such warning was sounded in this case. Several witnesses who were present saw the accident and watched the train approaching, did not hear any whistle or bell sounded, while witnesses for the defendant who were on the train testified that the whistle was sounded and the bell was rung. There is evidence that another railroad track was near there, and a whistle at the distance of the cut, around a curve, might easily be mistaken for one on another track, or the whistle may have been sounded before the train cleared the

cut. It was a question for the jury whether the warning was sufficient to apprise anyone approaching the crossing that a train was coming.

Appellant further contends that Hesse was negligent, as a matter of law, so as to bar recovery. Some witnesses for plaintiff were where they could look up the track as far as the cut, while others testified that it was impossible for one, crossing from the north, to see up the track until within five or six feet of the rails, which would put the front wheels almost on the rail before the driver could see an approaching train. According to the engineer, the train was running forty-seven miles an hour—about seventy feet per second. He struck the automobile within one and a half seconds after he saw it. The Ford could hardly have traveled its length in that time. The hesitation of Carpenter, before driving on the track, when his car was within two or three feet of it, was probably so that he could look up the track. Then, according to the engineer, he might have been unable to see the train, or he might have seen it and might have become confused, so that for a second he was incapable of rational action. The evidence fails to show that he either saw the danger, or negligently failed to see it, or recklessly drove in front of the engine which he knew, or should have known, was dangerously near. Besides, it is not contended that his negligence, if it contributed to the injury, was imputable to Hesse, or relieved defendant as to liability.

We think the demurrer to the evidence was properly overruled and the case properly submitted to the jury. Before finding for the plaintiff the jury were required to find that the defendant was guilty of both acts of negligence—excessive speed and failure to sound a warning—as causing the death.

II. For several reasons appellant assigns error to the giving of Instruction 2, on behalf of plaintiff.

First, it is said that the instruction is erroneous because it is too long. It covers three and one-half printed

pages of the record.  An instruction otherwise unobjec-
tionable will not be held erroneous merely be-
cause of its length.  [Wolfe v. Payne, 241 S.
W. 1. c. 919; State ex rel. Greer v. Cox, No. 25324, de-
cided at this term of this court.]

*Length.*

Second: Appellant objects to this portion of the in-
struction:

"and if the jury further find and believe from the
evidence  .  .  .  that said crossing was so used by the
public generally for such a length of time prior to the
time said Albert Hesse was injured, that the de-
fendant and its agents  .  .  .  had reasonable
grounds to anticipate, and, in the exercise of ordinary
care the defendants and its agents, servants and em-
ployees, so operating its trains over said crossing, *would*
have anticipated the presence of persons and vehicles
upon said crossing."

*Would.*

The objection is to the word *"would."* It is argued
that this in effect told the jury that if the train opera-
tives had been exercising ordinary care they would have
anticipated the presence of persons on the crossing, thus
assuming that they were negligent.  We do not think it
susceptible of that construction.  It simply required
the jury to find that the crossing was used in the man-
ner mentioned in the evidence, and that the de-
fendant's servants had reasonable ground to antici-
pate, and, in the exercise of care would anticipate the
presence of persons and vehicles on the crossing.  It is
like saying: "If the jury finds that a careful person,
under the circumstances, would anticipate," etc.  Glaser
v. Rothschild, 221 Mo. 180, and Zini v. Terminal Rail-
road Assn., 235 S. W. 86, are cited in support of the con-
tention.  In each of those cases the court held that there
was an assumption that the party designated was not
exercising ordinary care by the use of an expression like
this: "That, *had the plaintiff been in the exercise of
ordinary care,* he would have detected," etc.

It is apparent that in those cases there was no con-
dition that the jury find the exercise of ordinary care,

while here there was a condition that the jury should find all the facts following the beginning of the paragraph including that part objected to.

Besides, the instruction required the finding of many other facts constituting negligence, before the jury were authorized to return a verdict for plaintiff.

Third: Appellant further objects to a part of the instruction which, after requiring the jury to find certain

Timely Warning.

conditions of obstruction limiting the vision of one approaching the crossing, continues thus: . . . "then it became the duty of defendant's engineer, in charge of and operating the train mentioned in the evidence, to exercise ordinary care to give *timely* warning of the approach of said train and cars to said crossing."

It is argued that the word "timely" should be defined, otherwise the jury was left to set up any standard which might suggest itself to them of what is meant by a timely warning. This argument does injustice to the intelligence of the jury. The instruction had fully set out the conditions shown by the evidence surrounding the situation, and a verdict for plaintiff was conditioned upon a finding of such conditions; the popular resort, the passing of people, the obstructions to the view, the sharp curve in the approach, the distance of the cut, and the entire circumstances shown by the evidence, and if the jury found these circumstances such as to make a dangerous crossing, then it was the duty of the defendant to give a timely warning of the approach of the train. The jury, as men of ordinary intelligence, would know that a timely warning meant a warning in time for one approaching the track to know the danger of crossing in front of a train. The timely warning of an approaching train is a warning in time for one who is warned to avoid being hit by it. We think a definition was unnecessary to make it more intelligible. Further, this part of the instruction did not authorize a verdict for plaintiff on failure to find a timely warning, but merely set forth the duty of the defendant. The jury was required to find

that the defendant failed to give to Albert Hesse *any* warning of the approach of the train, and in doing so failed to exercise ordinary care, also to find that the train was running at excessive speed, before they could return a verdict for the plaintiff.

Fourth: Objection is made to a part of the instruction as follows: "and if you further find and believe

Negligently Run.

from the evidence that the defendant and its servant the engineer . . . negligently run and operated said engine and train . . . at a greater rate of speed than was reasonable," etc.

It is argued that the expression "negligently run and operated such engine at a greater rate of speed than was reasonable" is an assumption that the engine was in fact running at a greater rate of speed than was reasonable. On the contrary, the jury was required to find not only that it was running and operated at a greater rate of speed than was reasonable, but that it was negligently run at that rate of speed. The use of both expressions, "negligently," and "greater than reasonable," does not mean that either the negligence nor unreasonableness of the operation was assumed. It is perhaps tautological. Either "negligently," or "greater than reasonable," would answer without the other, but the jury were required to find the negligent speed in two aspects of looking at it. It could be designated either as negligent speed, or speed greater than reasonable.

Fifth: It is also objected to the instruction that it contains a reiteration of the facts which tend to establish user of the road crossing, and amounts to an unwarranted comment upon the evidence. It is not a comment upon

Comment.

the evidence to require a finding of specific facts alleged, unless undue prominence is given to such facts and the jury directed as to the weight to be given them. The instruction requires a finding by the jury of a great many facts presented by the plaintiff's evidence relating to the conditions surrounding the place of the accident. While this may have been unnecessary in an instruction, it could not have been

injurious to the defendant; it placed an unnecessary burden upon the plaintiff in requiring the jury to find a lot of detailed facts which might have been generalized in briefer form.

Sixth: It is also objected because negligence is predicated upon a finding that defendant and its engineer, running and operating said train, "negligently failed to give said *Albert Hesse* any warning of the approach of said train." It is claimed that this

Warning to Deceased Only.

is erroneous because it requires a finding that the *deceased* was warned, and failure to do so was negligence regardless of whether a general warning was given. No warning of the train's approach would be adequate, or a protection to anyone likely to get hurt, unless it was a warning to anyone and every one who was about to cross the track in front. Hesse and his companion were about to cross the track, and therefore were included in the persons to whom warning should be given, so that logically the instruction is correct. The jury would not be misled by understanding that some different and specific warning had to be given to Hesse which was not given to persons generally situated as he was.

III. Appellant assigns error to the instruction on the measure of damages, as follows:

"7. The court instructs the jury that if you find for the plaintiff you should allow her such a sum, not less then $2,000 and not more than $10,000 in the discretion of the jury, and in determining the amount you will allow her you may take into consideration the pe-

Measure of Damages.

cuniary loss, if any, occasioned to plaintiff by the death of her husband, and in considering the subject of her pecuniary loss you may consider the additional burden, if any, falling upon her by reason of his death of supporting their minor children until they become of age during the time her said husband would probably have lived and supported said minor children during their minority, and while they

lived and were minors, as you may believe from the evidence.''

It is argued that this suit was brought under Section 4217, Revised Statutes 1919, the penal statute, and therefore the recovery must be a penalty and not compensatory; the amount awarded should not be measured by the pecuniary loss to the plaintiff. This court, in the case of Grier v. Railroad Co., 286 Mo. 523, elucidated the range of facts to be considered by the jury in awarding damages under the penalty statute, which permits a recovery between the limits of $2,000 and $10,000 ''in the discretion of the jury.'' Commenting upon that Judge RAGLAND, writing the opinion, said:

''It cannot be said that the view that the jury may take into consideration the circumstances attending the negligent or wrongful act causing death and also the extent of the pecuniary loss, if any, in fixing the amount of the recovery, is in any respect incongrous with the holding that the entire recovery is essentially and primarily penal. As to the first, the acts or omissions constituting negligence, or evidencing criminal intent, with their attendant circumstances, would unavoidably be brought to the knowledge of the jury in the effort to establish liability and would be considered by them in that connection; and, if the jury, without other direction, were merely told to assess as a penalty a sum not less than $2,000 and not exceeding $10,000, in their discretion, in making the assessment they would inevitably and necessarily, and just as properly, take these same facts into account as they would were they fixing the punishment in a prosecution for a purely criminal offense. As to the second, it is a common practice by legislative bodies, in prescribing punishments for certain crimes against property, to make the severity of the punishment dependent in some degree upon the extent of the pecuniary loss inflicted, or attempted to be inflicted, on the owner.''

The case of Lackey v. United Railways Company, 288 Mo. l. c. 145, is cited also in that connection. From these authorities it is apparent that evidence of the

circumstances which would mitigate or aggravate the penalty, including the pecuniary injury to the party affected, is admissible for the purpose of fixing the amount of the verdict or penalty, and are to be considered by the jury for that purpose.

The case of Treadway v. United Railways Company, 300 Mo. 156, is cited by appellant as in point to show that part of the instruction objected to is erroneous. The instruction in that case (1. c. 176) contains this:

"The court instructs the jury if, under the evidence and other instructions in this case, you find your verdict for the plaintiff, then *you will assess his damages at any* sum, not exceeding $10,000 that you may deem fair and just, *having reference to the injury, if any,* resulting to the plaintiff . . . and you may take into consideration in estimating said damages, if any, the loss of support" etc.

Judge RAGLAND, writing that opinion, and having in mind the Greer case, held that instruction erroneous because it directed the jury to *assess damages* in favor of the plaintiff whereas it was their duty to assess a penalty against the defendant; and the objection was made that it told the jury they "must assess plaintiff's recovery" at a sum which would compensate plaintiff for his pecuniary loss. Do those objections apply here?

The jury in this case, instead of assessing the damages to plaintiff were authorized to allow her such sum not exceeding, etc., "in the discretion of the jury." They were not directed to assess her damages. Any verdict they could render, assessing a penalty, would have to be *allowed* her, hence, when they were directed if they found for her to allow her a sum within the statutory limit in their discretion, they were strictly within the statute and within the ruling in the Greer case.

Appellant apparently concedes that facts showing the pecuniary loss to the plaintiff were admissible to assist the jury in determining the amount of penalty which the would assess; it claims that the instruction authorized the jury to *compensate* the plaintiff for dam-

ages sustained. Grammatically, it does not say so. If the defendant thought the instruction was likely to mislead the jury in that respect, it should have asked an instruction more clearly defining the manner in which they should consider evidence of that character, limiting their consideration of it to the infliction of the penalty. The court could very properly have given an instruction telling the jury they were not authorized to assess plaintiff's damages as a compensation for the injury so suffered, but that they could only assess a penalty against the defendant, and they should consider only the pecuniary loss to her for the purpose of determining the amount of the penalty. The defendant failed to ask any instruction further qualifying that matter, and therefore i˗ not in position to complain of the instruction.

Finding no reversible error in the instruction the judgment is affirmed.

PER CURIAM:—The foregoing opinion by *White*, *J.*, in Division Two, is adopted as the opinion of Court in Banc. All the judges concur, except *Graves, J.,* who dissents, and *Otto, J.,* not sitting.