STATE EX REL. AND TO USE OF M. S. WILKINSON, RESPONDENT, v. CENTRAL SURETY & INSURANCE CORP., APPELLANT.—112 S. W. (2d) 607.

Kansas City Court of Appeals.   December 17, 1937.

*William T. Bellamy* and *Russell Garnett* for respondent.

*McCune, Caldwell & Downing* and *Lynn Webb* for appellant; *A. Lamkin James* of counsel.

SPERRY, C.—This was an indemnity suit brought by plaintiff, M. S. Wilkinson, against defendant, Central Surety and Insurance Corporation. The parties will be referred to herein as plaintiff and defendant. From a judgment for plaintiff, defendant appeals.

Defendant was surety on the official bond of Manning, who was a notary public. Plaintiff sold certain personal property to Dreisbach, in settlement of outstanding unpaid checks and accounts due from plaintiff to Dreisbach. Dreisbach, in the presence of plaintiff, filled out a quitclaim deed, enumerating therein the articles sold and reciting that the consideration therefor was one dollar. The name of Dreisbach, as grantee therein, was not inserted, as plaintiff supposed and thought it was, but, instead, the grantee named therein was one Wilbur Wilkinson, such name either having been surreptitiously inserted at the time the bill of sale was drawn by Dreisbach, or by some person inserted in the blank space, provided in the form used, at a later date. This transaction occurred March 22, 1935, at Warrensburg, Missouri, and, on the same date, Dreisbach presented this instrument to Manning and told him that he personally saw plaintiff sign it, and Manning executed the following certificate, which he signed as Notary Public, and to which he attached his official seal, to-wit:

"(Notary Seal)
"Verne C. Manning
"Notary Public, Jackson County, Mo.
"Erase or draw line through this clause if not needed.
"(The following appears on back of paper:)
"State of Missouri, County of Jackson.
"On this 23 day of March, A. D. 1935, before me personally appeared M. S. Wilkinson and R. L. Cameron and ..........., his wife to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

750

"In Testimony Whereof, I have hereunto set my hand and affixed my official seal, at my office in Kansas City the day and year first above written.

"My commission as Notary Public will expire on the 16 day of Sept., 1937.

"Verne C. Manning,
"Notary Public."

Some months thereafter Dreisbach presented this bill of sale to the Prosecuting Attorney and filed a verified complaint against plaintiff charging him with the unlawful issuance of certain checks to Dreisbach at a time when plaintiff did not have sufficient funds on deposit in the bank to pay same. The Prosecuting Attorney relied on the bill of sale and filed a criminal charge against plaintiff based on said checks. These checks had been issued by plaintiff to Dreisbach more as promissory notes than as checks and were taken up and paid by the transfer and sale of the property mentioned in the bill of sale. Plaintiff was tried on the criminal charge and was acquitted. This suit on the surety bond followed.

The bill of sale was false to the extent that, altho Dresisbach was really the purchaser, the instrument recited that one M. S. Wilkinson was grantee; and, also, to the extent that, whereas Manning, in his certificate, recited that plaintiff personally appeared before him and "executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed," it is admitted by defendant that plaintiff did not appear personally before Manning at any time and that his signature was already affixed thereto when the instrument was first presented to Manning. Plaintiff admits that the signature appearing thereon is his own genuine signature.

The cause of action stated is not one for malicious prosecution, but is one for conspiring to induce and cause a malicious prosecution to be instituted by the Prosecuting Attorney of Johnson County. Plaintiff's main instruction, submitted by him and given by the court, required a finding to that effect by the jury. His evidence was directed to proving this contention. The answer admitted the execution of the bond and denied every other allegation contained in the petition.

It is argued that defendant is only liable, under its bond, for the improper acts of Manning in his *official* capacity as Notary Public; that it is not liable for his *personal* and *private* acts, such as a conspiracy to bring about and cause the institution of an unlawful and groundless prosecution, except in so far as some *official* act of his *brought about* such a prosecution, or *contributed* to bring it about; and that the evidence of plaintiff's only witness on the question of whether or not the notary's official certificate and seal *caused* the prosecution, or *contributed* to it, positively proves that it did not do so.

A notary's bond is in the nature of a contract of indemnity as between the bondsmen and all persons who may suffer damage by reason of the neglect, fraud or misconduct of the official (State ex rel. v. Thompson et al., 81 Mo. App. 549, 1. c. 556) ; and the surety is only liable for the *official acts* of the notary. [State ex rel. v. Ogden and American Surety Company of New York, 187 Mo. App. 39.] Where the suit is one based upon the *negligence* of the official, a violation of the condition of the bond will only support a judgment for nominal damages unless it be shown that such violation was the proximate cause of substantial damages. [State ex rel. v. Packard et al., 199 Mo. App. 53; State ex rel. v. Globe Indemnity Co. et al. (K. C.), 29 S. W. (2d) 743, 1. c. 747; State ex rel. v. Globe Indemnity Co. et al., 332 Mo. 1089, 61 S. W. (2d) 733, 1. c. 737.]

Plaintiff introduced in evidence the deposition of the Prosecuting Attorney of Johnson County, in an effort to prove that that official relied on the *false certificate* of the notary in determining whether or not he would file the criminal charges against plaintiff; that he was mislead by said certificate and would not have filed the charges had said false certificate not been attached thereto. The witness testified by deposition, taken by plaintiff and by him introduced, that:

"A. I think I have answered that question. I stated that if it had not borne the certificate, I could see no reason why the course of events would have been altered in any way.

"Q. You say you could see no reason why the course of events would have been altered in any way. You mean, do you not, that you would have instituted the prosecution just as you did? A. Certainly.

"Q. As a lawyer, Mr. Cooper, you of course knew that an acknowledgment on conveyance of personal property in Missouri was in no way necessary to the validity of the instrument? A. Oh, yes, I knew that.

"Q. Was the fact that the acknowledgment was on there what convinced you that the instrument was true, or the fact that they signed the instrument? A. I relied upon the instrument because the signature was there.

"Q. What signature? A. M. S. Wilkinson. I could not say the seal convinced me, because I knew his signature. I had seen it on checks." . . .

Thus it will be seen that the prosecuting attorney testified flatly that it was not the act of Manning in placing the seal on the bill of sale that caused him to prosecute plaintiff, but, that he acted as he did because of the signature of plaintiff thereon which he recognized to be genuine. The St. Louis Court of Appeals, in State ex rel. v. Thompson, 81 Mo. App. 549, 1. c. 555, quoted with approval the following: "The only testimony as to the purchase of the note was

delivered by the relator. As against the estate of Keating she was incompetent to testify as to this fact, it being peculiarly within her knowledge and not known to the surviving obligors in the bond (Fulkerson v. Thornton, 68 Mo. 468), and as proof of the fact was essential, the nonsuit as to the estate was proper." In the case at bar the matter about which he testified was "peculiarly within the knowledge" of the prosecuting attorney. The fact sought to be established was known only by him. His evidence being the *only* evidence on the direct point, and it being offered by plaintiff he is bound by it. We held in Raw v. Maddox, 230 Mo. App. 515, l. c. 519, 93 S. W. (2d) 282, that a necessary link in the chain of a case cannot be proved by drawing a conclusion directly contrary to the evidence of the adverse party, who testified as respondent's witness, where same was the only evidence on the point. This situation certainly falls within that rule. It may also be pointed out that a question of whether a lawyer, skilled in the filing and prosecution of criminal cases, as was the witness here, would be influenced by a *false* certificate, or *any* certificate, appearing on an instrument which did not require a certificate in order to validate it, is one which this witness could more accurately answer than could a jury composed of laymen. Without the evidence of the prosecuting attorney who personally knew whereof he spoke, or at least some "expert" evidence from some source, the jury would necessarily rove about in a morass of doubt and speculation on the question of what actually brought about the prosecution. [Pedigo v. Roseberry, 102 S. W. (2d) 600, l. c. 606.]

Plaintiff sought to minimize the effect of the above testimony by offering in evidence an unsworn and undated *ex parte* statement, purporting to bear the signature of the same witness. This offer was properly rejected by the trial court. Plaintiff could not have been "surprised" or "entrapped" by any witness whose deposition he himself introduced, for he knew, weeks in advance, every statement contained in said deposition (White v. Missouri Motors Distributing Co. (K. C.), 226 Mo. App. 453, l. c. 459, 47 S. W. (2d) 245); and it is only when a party has been "entrapped or surprised" that he is permitted to impeach his own witness. [Dauber v. Josephson (K. C.), 209 Mo. App. 531, l. c. 543; Gallagher v. Schutte Lumber Co., 273 S. W. 213, l. c. 221.] Plaintiff is bound by the evidence of the witness on this point. [Schroer v. Brooks, 204 Mo. App. 567, l. c. 585, 224 S. W. 53.]

From what has been said it necessarily follows that since the execution of the notarial certificate and seal did not cause or contribute to cause, the institution of the criminal charges against plaintiff, no substantial damage accrued to him by reason of the breach of the conditions of the bond. Consequently the case would have to be reversed and remanded (State ex rel. v. Packard, *supra*), were it not for plaintiff's contention that it is not necessary, in a case bottomed

on fraud and conspiracy to show that the damages were directly and proximately caused by the particular official act shown to have been performed by the notary. He says in effect that the act complained of was not *negligent,* but fraudulent, on the part of Manning; and that it was an official act committed by Manning in the course of an unlawful conspiracy between the latter and Dreisbach to bring about the arrest and malicious prosecution of plaintiff.

From a careful reading of the cases of State ex rel. v. Ogden and American Surety Company, *supra,* and State ex rel. v. Packard, *supra,* it would appear that Judge TRIMBLE of this court, who was the author of both of said opinions, made some distinction between cases bottomed on the *negligent* act of the notary, and those resting on the *fraudulent* act of such an official. However, in the former case, altho the act was fraudulent and intentional on the part of the notary, yet that act, the affixing of the notarial seal and certification, was the direct cause of the relator parting with his money; and in the latter case the *negligent* act complained of did not cause the loss, for relator there relied and acted on other representations made to him and not on the certificate. of the notary, which, as in the case at bar, was not necessary to the validity of the instrument and played no part in the actual loss.

What was meant by the language used in the two cases is that, where there is fraud on the part of the notary, *and if the official act* of the notary either *caused* the loss or *contributed* to it, *no matter how remotely,* the bondsman is liable for the full amount of the actual loss. In State ex rel. v. Packard, 199 Mo. App. 53, l. c. 59, the following language is used "Consequently, the notary's certificate can-not be said to have proximately caused the loss *even if relator did rely* on said certificate to assure him that the signer of the note he got was the same man that had signed the others." (Italics ours.) And in State ex rel. v. Ogden and American Surety Company, 187 Mo. App. 39, l. c. 47, it is said: "True, the surety is liable only for the official acts of the notary, . . . The fraudulent certificate, therefore, was not merely *one* of the causes of his letting go of his money. It was the efficient cause thereof, and, *if it be necessary in a case of fraud,* it was proven to be a *proximate* cause of the loss. . . . For, though the official fraudulent act of the notary be accompanied by other acts assisting in the production of the loss, yet if there is a natural and continuous sequence from such fraudulent official act to said result, and, but for that act, the result would not have happened, then such act is the cause, and the proximate cause of the result even though another cause may have arisen and joined in producing the result." (Italics ours.) And, on page 49 thereof, it is said: "His fraudulent official act was not only absolutely necessary to obtain the money, and therefore was a cause of loss, but it was a proximate and not a remote cause thereof if it were necessary

to show that, in a case like this. When *fraud* enters into a transaction it permeates and taints it throughout and reaches from the act to the resulting consequence. In this case, the damages arising from the fraudulent official act of the notary undoubtedly reached through the transaction to relator's loss and was the cause thereof and the damages caused by the fraudulent official act of the notary is not separable from the damage caused by the fraudulent acts of Ogden as an individual."

In the Ogden case, *supra,* the court does not flatly hold that where the act is charged is a fraudulent act it is not necessary that it be the *proximate* cause of the loss; but that is probably what is meant. If it is authority for any different rule than that laid down in the later case of State ex rel. v. Packard, *supra,* it is this: Where the act complained of is fraudulent, the fraud permeates the whole transaction to such an extent that it will be conclusively presumed that such fraudulent act was a proximate cause of the damages, no matter how many other acts or circumstances joined with it to produce the result, and that is so regardless of how remote in fact it may be; nevertheless such fraudulent official act must *contribute* in some manner to the result.

This is but restating the general law in regard to fraud and deceit; but nowhere do we find a case holding that one must not have made some statement or committed some act which *contributed* to the loss, in order that he may be liable for damages. For a thorough resume of the rule in this regard see Cahn v. Reid and Bungardt, 18 Mo. App. 115, l. c. 131-132-133-134; Saunders v. McClintock, 46 Mo. App. 216, l. c. 224. We see no sound reason why a surety on a bond should be held liable in damages for the fraudulent official act of a notary unless said act, either directly or indirectly, proximately or remotely, causes or contributes to cause, the damages complained of. To hold otherwise would be to single out a surety and make him liable on a state of facts that has not been held to render liable a principal in a case for fraud and deceit. [Cahn v. Reid and Bungardt, *supra.*]

Holding the view herein expressed we deem it unnecessary to determine whether or not Manning and Dreisbach conspired together to procure the arrest and prosecution of plaintiff; or to pass on the other points raised in this appeal.

Where, as here, there has been a breach of the bond and substantial damages have been erroneously allowed, the judgment should be reversed and the cause remanded with directions to the trial court to enter judgment for plaintiff in the amount of the bond to be satisfied upon the payment to plaintiff of the sum of one dollar, and the costs up to the date of tender of judgment in circuit court. [State v. Globe Indemnity Co., 61 S. W. (2d) 733, l. c. 737.]

It is so ordered.  *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion by SPERRY, C., is adopted as the opinion of the court.  The judgment is reversed and the cause is remanded with directions to enter judgment for plaintiff for one dollar and costs accruing prior to tender.  All of the judges concur.