LLOYD A. PHILLIPS, Appellant, v. FRANK L. HENSON.—30 S. W. (2d) 1065.

Division One, September 4, 1930.

*Inman, Horsefield & Cravens* for appellant.

*Hausner & Versen* and *George Barnett* for respondent.

FRANK, J.—Action by appellant, plaintiff below, to recover damages for alleged personal injuries. Verdict and judgment for defendant, and plaintiff appealed.

Plaintiff's injuries were caused by a collision between a motorcycle which he was riding and an automobile truck driven by defendant. The collision occurred at the intersection of Easton and Kienlen Avenues in the city of Wellston. Easton Avenue runs east and west, is fifty feet wide from curb to curb, and has a double line of street car tracks in the center thereof. Kienlen Avenue is about thirty feet wide, runs north and south, and intersects but does not extend south of Easton Avenue.

The evidence favorable to plaintiff tends to show that he was riding a motorcycle westward on Easton Avenue in the space between the north rail of the north car track and the north curb of Easton Avenue, at a rate of speed variously estimated from twelve to twenty-

five miles per hour; that defendant was driving his motor truck eastward on Easton Avenue in the eastbound car track; that when plaintiff reached the east curb line of Kienlen Avenue, defendant's truck was at a point about twenty-five feet west of the west line of Kienlen Avenue and, at that time suddenly and without signal or warning turned his truck to the left in an attempt to enter Kienlen Avenue, and the left end of the front bumper of defendant's truck struck the rear wheel of the motorcycle. The force of the collision threw plaintiff from the motorcycle and caused the injuries for which this suit is brought.

Other facts will be stated in course of the opinion.

The first complaint is that the court erred in refusing to give plaintiff's requested instruction number one. This instruction, in substance, directed a verdict for plaintiff in event the jury found that defendant turned his truck northward across Easton Avenue and toward Kienlen Avenue without first giving any signal or warning of his intention to make such turn and that defendant's failure to give a signal before turning, if he did so fail, directly caused plaintiff's injuries, if any.

Plaintiff states his position regarding this instruction as follows:

"Under Subsection J, Section 21, of the Laws of Missouri 1921, First Extra Session, it was the duty of the defendant, before turning to the left at the intersection, to give a signal with his hand of his intention to turn, and while the statute specifies that the signal was to be such as would be visible to one approaching from the rear, it cannot be disputed that such a signal would be equally a warning to one approaching from the opposite direction. The violation of a statutory duty is negligence *per se*. But, in the absence of any trouble on the subject, the sudden turning of an automobile to the left across a busy intersection without an ample signal is negligence as violative of a common-law duty."

Subsection J, Laws of Missouri 1921 (1st Extra Session), page 94, to which plaintiff calls attention, provides as follows:

"(j) An operator or driver intending to turn his vehicle to the left shall extend his arm at an angle below horizontal so that the same may be seen in the rear of his vehicle, and shall slow down and approach the intersecting highway so that the left side of his vehicle shall be as near as practicable to the center line of the highway along which he is proceeding before turning."

When this statute is read in connection with Subsection K of the same statute, the intention of the Legislature, in enacting these statutes becomes at once apparent. Subsection K reads as follows:

"(k) If a motor vehicle is equipped with a mechanical or electrical signalling device, which will display a signal plainly visible

from the rear and indicating intention to turn or stop, or that the speed of the motor vehicle is being slowed, the signals with the hand and arm, herein required, need not be given, . . ."

If defendant's truck had been equipped with a mechanical or electrical signaling device which displayed a signal plainly visible from the rear, and by the use of such device defendant had indicated his intention to turn to the left, it would not have served as a warning to plaintiff, because he was not in a position to see such a signal, yet the giving of such a signal would have excused defendant from giving a signal with his hand and arm, because Subsection K of the statute expressly so provides. The language of the statute indicates that the signal of intention to turn a motor vehicle to the right or left was intended as a warning to persons approaching from the rear. No doubt it would have been wise to have required a signal or warning to persons approaching from the opposite direction, but as the Legislature did not see fit to do so, we have no authority to incorporate such a provision into the statute by construction. As the statute does not require the driver of a motor vehicle, on approaching intersecting streets, to warn persons approaching the same intersection from the opposite direction, of his intention to turn his vehicle to the right or left, failure to give a warning under such circumstances would not be negligence *per se.*

However, in the absence of any statute on the subject, it is the common-law duty of the driver of a motor vehicle to give a signal or warning of his intention to turn his motor vehicle to the right or left at intersecting streets or highways, where the circumstances and conditions are such that care and prudence would dictate that such signal or warning be given in order to protect the lives and property of other persons then on or using such highways. [Thompson v. Smith, 253 S. W. 1023.] Although the facts and circumstances in this case were such as made it the duty of defendant in the absence of a statutory requirement, to warn plaintiff of his intention to turn his truck to the left, yet, we cannot regard plaintiff's instruction number one as properly submitting that question to the jury because the instruction did not require the jury to find the facts which would make it the common-law duty of defendant to give such warning. The instruction was properly refused, (1) because it treated the failure to give the signal as negligence *per se,* although the statute did not require the signal to be given, and (2) because it did not require the jury to find the facts necessary to make it the duty of defendant to give the signal.

It is next contended that the court erred in refusing to give plaintiff's requested instruction numbered two. Plaintiff sought by this instruction to submit the case to the jury under the humanitarian doctrine. Defendant contends that the instruction was properly refused because the facts did not warrant the submission of the case under that doctrine.

Defendant owed plaintiff no duty under the humanitarian rule until he saw or by the exercise of the highest degree of care could have seen him in a position of peril and either oblivious thereto or unable to extricate himself. Plaintiff was not in peril until the truck turned to the left. Defendant's act in turning the truck without giving a signal or warning of his intention so to do, might have been primary negligence, but it was not negligence under the humanitarian rule, because plaintiff was not in peril until the truck turned. Defendant's liability under the humanitarian rule depends upon whether plaintiff's injuries were caused by negligent acts of defendant after he saw or should have seen plaintiff in a position of peril. While defendant's failure to give a signal or warning of his intention to turn the truck was not negligence under the humitarian rule, it was a circumstance tending to show why plaintiff might have assumed that the truck would not turn and for that reason he could cross the intersection in safety, but we must determine whether or not the case was submissible under the humanitarian doctrine in the light of defendant's acts after the truck turned.

The evidence favorable to plaintiff tended to show the following facts:

As plaintiff approached the intersection from the east he saw defendant's truck approaching the same intersection from the west. At that time defendant was from eighty to one hundred feet west of the intersection and plaintiff was fifty feet east of it. During the time plaintiff watched the truck while he traveled that fifty feet, he did not hear any warning or see defendant give any signal of his intention to turn the truck to the left. Other witnesses testified that no signal or warning was given. When defendant reached a point about twenty-five feet west of the intersection, he turned his truck to the left without giving any signal or warning of his intention so to do, and cut across the corner of the intersection in a northeasterly direction. As plaintiff approached the intersection, he looked to the north to see whether anyone was coming south on Kienlen Avenue and saw one machine slowing up to make a stop. He then looked back west and saw the truck about even with the west line of Kienlen Avenue and crossing the westbound car track in a northeasterly direction, and believing that it was so close upon him that if he attempted to stop, it would place his motorcycle in the path of the truck, he swerved to the right, increased his speed

and attempted to pass in front of the truck in order to avoid a collision.

He almost escaped in safety. The left end of the front bumper of the truck struck the rear wheel of the motorcycle. At the time plaintiff saw the truck crossing the westbound car track, he was at the east line of the intersection, traveling at a rate of speed variously estimated at from twelve to twenty-five miles per hour. As he approached the east line of the intersection, he made no attempt to stop, but proceeded across the intersection. The collision occurred from three to five feet east of the west curb of Kienlen Avenue and three or four feet north of the north line of Easton Avenue.

Easton Avenue is fifty feet wide, and two street-car tracks occupy a space of fifteen feet in the center thereof. The north rail of the westbound car track is approximately twenty feet from the point of collision. Defendant testified that he could have stopped the truck within three or four feet at any time while he was making the turn, but that he did not slacken his speed or attempt to stop until he saw the motorcycle directly in front of him, at which time he "jammed the brakes on" and stopped within two or three feet.

Viewing the evidence in a light most favorable to plaintiff it tends to show that if defendant had been exercising the care enjoined upon him by statute, he could have prevented the collision. It was his duty to be on the lookout and it will be held that he saw what he could have seen if he had been looking. He started to turn the truck when he was twenty-five feet west of the intersection. At that time plaintiff was ten feet east of the intersection, traveling at a rate of speed variously estimated at from twelve to twenty-five miles per hour without making any preparations to stop before crossing the intersection. After the truck entered the intersection and was crossing the westbound car track, it was then twenty feet from the point of collision. At that time plaintiff had reached the east line of the intersection. If defendant had been then looking, as was his duty to do, he could have seen that plaintiff intended to cross the intersection and that a collision was inevitable unless something was done to prevent it. The truck was then twenty feet from the point of collision. Defendant testified that he could have stopped the truck within three or four feet, but did not slacken its speed or attempt to stop it until the motorcycle was directly in its path. He then applied the brakes and stopped within two or three feet. The evidence made a prima-facie case for plaintiff under the humanitarian rule and should have been so submitted to the jury. [Banks v. Morris & Company, 302 Mo. 254, 270, 257 S. W. 482.]

Defendant contends that the instruction, as requested, was erroneous in that it exacted of him the exercise of the highest degree of care.

The statute requires that every person operating a motor vehicle on the highways of this State shall drive the same in a careful and prudent manner, and *shall exercise the highest degree of care*, and at a rate of speed so as not to endanger the property of another or the life or limb of any person. [Sec. 19, p. 91, Laws 1921, First Extra Session.] Section 3 of the same act defines the word "highway" as "any public thoroughfare for vehicles, including state roads, county roads and public streets, avenues, boulevards, parkways or alleys in any municipality." Defendant's contention on this point is that the statute requiring persons driving motor vehicles on the *highways* of this State, has no application to this case because there was no evidence that the street on which defendant was driving his truck was a *public highway*.

The evident purpose of the Legislature in enacting this statute was to protect the lives and property of persons while on or using the roads of this State where the public are accustomed to travel. It would be giving the statute a strained and narrow construction to hold that the Legislature did not intend to protect the lives and property of persons on or using a highway continuously traveled by the public generally, unless such highway had been legally established by constituted authority or by user for the statutory period of time. Keeping in mind the purpose of the statute, it is reasonable to conclude that the word "highways" was used in the statute in its popular rather than its technical sense and was intended to include all highways traveled by the public, regardless of their legal status. A similar question was decided by the Supreme Court of Arkansas in Simmons v. State, 232 S. W. 597. There defendant was convicted of the violation of a statute prohibiting drunkenness on a public highway, street, park or thoroughfare. On appeal contention was made that the conviction should be reversed because there was no evidence that defendant was in a drunken condition *on a public highway*. The court disposed of that contention by saying:

"The word 'highway,' as used in this statute, was intended to embrace any road or thoroughfare used and traveled by the public, even though the same was not laid out by the county court and technically designated as a public road or highway. 'Highway' is used in its popular rather than its technical sense, and is synonymous with 'road,' which is 'an open way of public passage for vehicles, persons, and animals.' [Webster's New International and Funk & Wagnall's dictionaries.]

"There was testimony in the record tending to show that the appellant was in an intoxicated condition on a 'road' leading from the church house at Mt. Maria, which was being traveled by the

public, and also on the street in Murfreesboro. This testimony was sufficient to sustain the charge as far as the word 'highway' is concerned, for a 'street' is 'a public highway.' [Webster's New International Dictionary.] The road was being used by the public."

In the instant case, the evidence was that defendant was operating his truck on Easton Avenue, a much traveled street in the city of Wellston. At the time in question there were three lines of automobile and other vehicular traffic on this street. Two lines of street cars were operated thereon. This evidence would warrant a finding that the street was traveled by the public generally and was a highway within the meaning of the statute.

It is next contended that the instruction was erroneous · because it was predicated on the fact that defendant was in a position of danger when approaching Kienlen Avenue when there was no evidence of that fact.

The evidence was that when defendant turned the truck to the left, he was then twenty-five feet west of the intersection. At that time, plaintiff was ten feet east of and approaching the intersection at a rate of speed variously estimated at from twelve to twenty-five miles per hour. There was evidence that he slackened the speed of his motorcycle about three miles per hour as he approached the intersection, but there was no evidence that he intended to stop or made any effort to do so before crossing the intersection. The evidence tends to show that the view was unobstructed and if defendant had been looking as plaintiff approached the intersection, he could have then seen that plaintiff was making no preparations to stop at the intersection and that a collision was inevitable unless something was done to prevent it. The evidence tends to show that plaintiff was in peril as he approached the intersection. His peril arose as soon as it became apparent from his conduct that he intended to cross the intersection without stopping. [Burke v. Pappas, 293 S. W. 145, 316 Mo. 1235.] In this connection, defendant contends that plaintiff was never in a position of peril because his own evidence showed that he could have stopped his motorcycle before reaching the point of collision, after he discovered the truck had turned to the left. Such evidence would convict him of contributory negligence, but contributory negligence is not a defense to a cause under the humanitarian rule.

It is next claimed that the instruction was properly refused because it was predicated on defendant's alleged negligence in failing to warn plaintiff of the approach of the truck when the evidence all showed that he was fully aware of the presence of the truck.

True plaintiff was aware that the truck was approaching from the west, but there was no evidence that he knew defendant intended to change its course to· the left. In the preceding paragraph we

pointed out that when defendant turned the truck to the left at a point twenty-five feet west of the intersection, plaintiff was then ten feet east of the intersection traveling at a rate of speed estimated at from twelve to twenty-five miles per hour, and making no preparations to stop before crossing the intersection. Plaintiff was then thirty-five feet from the point of collision. The view was unobstructed. We cannot say as a matter of law that defendant by the exercise of the highest degree of care could not have seen the situation or warned plaintiff at that time, or that an adequate warning given at that time would not have prevented the collision. That issue should have been submitted to the jury. [Smith v. St. Louis-San Francisco Ry. Co., 9 S. W. (2d) 939, 945.]

It is next contended that the instruction was properly refused because it assumed that plaintiff was in a position of danger when approaching the intersection. The instruction required the jury to find ''that . . . defendant saw plaintiff, or by the exercise of the highest degree of care could have seen him, on Easton Avenue either crossing or approaching its intersection with Kienlen Avenue, and in danger of being struck,'' etc. We see no merit in this criticism of the instruction.

It is our conclusion that plaintiff made a prima-facie case under the humanitarian rule, and the court erred in refusing to submit the case so made under plaintiff's requested instruction numbered two. We also think the court erred in giving defendant's instructions four and five. These instructions ignored the case made under the humanitarian rule and directed a verdict for defendant in event the jury found that plaintiff was guilty of contributory negligence. This was error. Contributory negligence is not a defense to a case under the humanitarian rule. [Gould v. C. B. & Q. Railroad Co., 290 S. W. 135, 315 Mo. 713; Burke v. Pappas, 293 S. W. 142, 316 Mo. 1235; Bobos v. Krey Packing Co., 296 S. W. 157, 317 Mo. 108.]

For the errors noted, the judgment is reversed and cause remanded. All concur.