**Derrick STONGER, by his Next Friend Randall STONGER, and Randall Stonger, Individually, Appellants,**

v.

**Gary RIGGS, Brenda Riggs, and Daniel Riggs, Respondents.**

No. WD 60036.

Missouri Court of Appeals, Western District.

Sept. 17, 2002.

Robert W. Wheeler, Keytesville, MO, for Appellants.

David P. Bub and Jennine D. Adamek, St. Louis, MO, for Respondents.

Before HOWARD, P.J., and EDWIN H. SMITH and NEWTON, JJ.

VICTOR C. HOWARD, Presiding Judge.

Derrick Stonger, a minor, and his father, Randall Stonger, sued Daniel Riggs, a minor, and his parents, Gary and Brenda Riggs, for damages arising from an incident in which Daniel was driving a riding

lawn mower that collided in the street with Derrick, who was riding a bicycle. A jury found that neither Daniel nor Derrick was at fault, and the trial court entered judgment in favor of Daniel and his parents.

On appeal, Derrick, by and through his next friend, Randall Stonger,[1] contends that the trial court erred (1) in failing to instruct on the proper duty or standard of care owed by Daniel in driving the lawn mower on the street, (2) in failing to instruct the jury on his claim against Gary and Brenda Riggs, and (3) in failing to instruct the jury on punitive damages.

Because the trial court erred as a matter of law in instructing the jury that Daniel owed an ordinary degree of care in operating the riding lawn mower on a public street rather than the highest degree of care as required by § 304.012,[2] we reverse and remand for a new trial.

### Background

Viewed in a light most favorable to the verdict, the following is a brief factual background of this case.

On or about May 14, 1998, Derrick, who was ten years old, was riding his bicycle on a street in Marceline, Linn County, Missouri, when he was struck by a riding lawn mower driven by Daniel, who was fourteen years old. Derrick had some bruises and scrapes, but Randall, his father, did not feel it was necessary to take him to the hospital until the following day, after Derrick had multiple complaints of pain. Randall also felt it was necessary for Derrick to receive emotional counseling because of nightmares and other problems he allegedly suffered after the incident.

In December of 1998, Derrick, by his father Randall Stonger, as next friend, and Randall Stonger, individually, filed a Petition for damages alleging negligence against the Riggses as Daniel's parents and against Daniel individually and seeking recovery for Derrick's physical and emotional damages he allegedly suffered as a result of the collision.

In April of 1999, the Riggses filed a motion for partial summary judgment, asserting that the Stongers failed to establish a submissible case against them as Daniel's parents in that no evidence demonstrated they knew or believed or had reason to know that Daniel would operate the riding lawn mower negligently, tortiously, violently, recklessly, carelessly, or with negligent disregard for the safety of others. The trial court sustained the Riggses' motion for summary judgment. The Stongers then dismissed, without prejudice, their claim against Daniel personally and appealed the trial court's judgment granting summary judgment as to the Riggses. After finding that a genuine issue of material fact existed as to whether the Riggses were negligent as Daniel's parents, this court reversed the trial court's summary judgment and remanded the case for further proceedings. *Stonger ex rel. Stonger v. Riggs*, 21 S.W.3d 18, 24 (Mo.App. W.D.2000), *reh'g and/or transfer denied* ("*Stonger I* ").

Upon remand from this court, Derrick and Randall[3] filed an Amended Petition

---

1. For simplification purposes, we refer to the claims herein as being made by Derrick with the understanding that because he is a minor, the claims are brought by and through Randall, as Derrick's next friend. We refer to the parties by their first names where necessary to avoid confusion.

2. Statutory references are to RSMo 2000.

3. In each of the counts, Randall made a loss of consortium claim for the "lost ... services, love and companionship of his son, Derrick Stonger." Randall dismissed his claims at trial, so his claims are not further discussed in this opinion.

for Damages for Negligence. Count I alleged negligence of and prayed for actual and punitive damages against Gary and Brenda Riggs. Count II alleged negligence of and prayed for actual and punitive damages against Daniel.

A jury trial was subsequently held in Linneus, Missouri, on March 20 and 21, 2001. After the case was submitted to the jury on only Derrick's negligence claim against Daniel, the jury returned its verdict in which it found neither Daniel nor Derrick at fault. This appeal follows.

### Point I—Duty of Care

In his first point on appeal, Derrick contends that the trial court should have instructed the jury that Daniel owed Derrick the highest degree of care, rather than the ordinary degree of care as instructed, because Daniel was operating a "motor vehicle" as that term is used in § 304.012.

The issue at hand involves the appropriate duty or standard of care owed by Daniel in operating the lawn mower on a public street, which is a question of law for the court. *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 158 (Mo. banc 2000); *see Davidson v. Otis Elevator Co.*, 811 S.W.2d 802, 803–04 (Mo.App. E.D. 1991) (explaining that "[n]egligence is defined in terms of degree of duty owed by defendant. [Missouri courts] recognize a breach of duty of ordinary care ... and of the highest degree of care" in addition to a "flexible" duty required of professionals, which is not relevant in the current case). We review questions of law de novo, without granting any deference to the trial court. *Yahne v. Pettis County Sheriff Dep't*, 73 S.W.3d 717, 719 (Mo.App. W.D. 2002).

For Derrick's claim against Daniel, the jury was instructed by Instruction No. 7 as follows:[4]

In your verdict you must assess a percentage of fault to defendant Daniel Riggs whether or not plaintiff Derrick Stonger was partly at fault if you believe:

First Daniel Riggs operated the riding lawnmower on the streets of Marceline, and

Failed to engage the clutch brake pedal, or

Failed to stand up and engage the interlock brake, or

Failed to shift the gear down or into park, or

Failed to turn the lawnmower, or

Failed to engage the parking brake, and

Second, Defendant Daniel Riggs in any one or more of the respects submitted in paragraph First was thereby negligent, and

Third, as a direct result of such negligence, plaintiff Derrick Stonger sustained damage.

The jury was also instructed in Instruction No. 8 that "[t]he term 'negligent' or 'negligence' as used in these instructions means the failure to use that degree of care that an ordinary careful person would use under the same or similar circumstances." *See* MAI 11.07 (defining "ordinary care").

The trial court refused to submit the following Instruction J offered by Derrick:

The term "negligent" as used in these instructions means the failure to use the highest degree of care. The phrase "highest degree of care" means that degree of care that a very careful person would use under the same or similar circumstances.

---

4. We note that the propriety of this instruction is not at issue on appeal.

*See* MAI 11.03 (defining highest degree of care). This varies from Instruction No. 8 in that the word "very" modifies "careful person" instead of the modifier "ordinary." It is this refusal that Derrick challenges on appeal.

■ Respondents contend that Derrick failed to properly preserve the issue of instructional error for appellate review. Specifically, they claim that "the Stongers never specifically objected to Instruction J at the instruction conference as required by Rule 70.03[ [5]] of the Missouri Rules of Civil Procedure, nor was the objection to Instruction J distinctly stated in the Stongers' Motion for New Trial." We have reviewed the record and find that Derrick properly preserved the issue for appeal. Derrick's counsel proffered Instruction J to the trial court, which the court subsequently marked "refused." At the instruction conference, Derrick's counsel objected to the trial court's instructions, stating, "[w]e think that the correct definition for negligence is the highest degree of care because this was a motor vehicle on the road." The objection was overruled. In

his motion for new trial, the same objection and allegation of error was raised. Despite Respondents' arguments to the contrary, we hold that the issue was properly preserved in accordance with Rule 70.03.

Turning to Derrick's argument on this issue, in determining whether there was instructional error, we must consider the proper standard of care owed by Daniel in operating the lawn mower. In this respect, Respondents argue only that the Stongers failed to cite any Missouri case in which an individual riding a lawn mower on the side of the street is subject to the highest degree of care.[6] Indeed, our research revealed no Missouri case on point.

### Riding Lawn Mower as a "Motor Vehicle" Under § 304.012

The relevant statute that Derrick argues imposes a "highest degree" standard of care upon Daniel is § 304.012, which states:

> Every *person* operating a *motor vehicle* on the *roads and highways* of this state shall drive the vehicle in a careful and

---

5. Rule references are to the Missouri Rules of Civil Procedure (2001). Rule 70.03 states: Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.
Rule 78.07 provides in relevant part:
(a) In jury tried cases . . . :
(1) Allegations of error, other than error relating to the form or language of the judgment, must be included in a motion for a new trial in order to be preserved for appellate review. . . .

6. Derrick cites *Root by and through Root v. Mudd*, 981 S.W.2d 651 (Mo.App. W.D.1998)

in arguing, by way of analogy, that because this court found the minor bicyclist therein owed the "highest degree of care" so, too, should a minor operating a lawn mower on a public street. We find *Root* distinguishable. *Root's* holding was based in large part upon the fact that § 307.188, which provides that "[e]very person riding a bicycle or motorized bicycle upon a street or highway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle provided by chapter 304 . . .," by its plain terms subjects all bicycle riders, adults or minors, to the duty to operate a bicycle on a street or highway with the highest degree of care under § 304.012(1) RSMo Supp.1997. 981 S.W.2d at 653–54. In the case now before us, there is no parallel statute governing the operation of riding lawn mowers upon which this court may rely in determining the proper standard of care owed by Daniel.

prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.

(Emphasis added); *see Crane v. Drake,* 961 S.W.2d 897, 901 (Mo.App. W.D.1998) (discussing a "motor vehicle" operator's duty to exercise the "highest degree of care," defined at MAI 11.01 and 11.03 as "that degree of care that a very careful person would use under the same or similar circumstances," in operating his or her motor vehicle under what is now § 304.012); *see also Wilson v. Shumate,* 296 S.W.2d 72, 77 (Mo.1956) (holding that because what is now § 304.012 imposes the highest degree of care standard on "every person" operating a motor vehicle on the roads and highways of this state, the instruction separately defining "negligence of a minor" in terms of the minor's age, capacity and experience (MAI 11.04) was not applicable in the case of the plaintiff minor's contributory negligence in operating a motor vehicle).

By its title, Chapter 304 of the Missouri Revised Statutes governs "traffic regulations." We are asked to determine whether Daniel was "operating a *motor vehicle* on the *roads and highways* of this state" so as to require him to exercise the "highest degree of care" under § 304.012. As explained by our supreme court, "[w]hen interpreting a statute, courts must give effect to the intent of the legislature as it is expressed in the words of the statute.... There is no room for construction where a statute is clear and unambiguous." *Ste. Genevieve Sch. Dist. R–II v. Bd. of Aldermen,* 66 S.W.3d 6, 11–12 (Mo. banc 2002). In determining whether a statute's language is clear and unambiguous, "the

standard is whether the statute's terms are plain and clear to one of ordinary intelligence." *Van Cleave Printing Co. v. Dir. of Revenue,* 784 S.W.2d 794, 796 (Mo. banc 1990).

The relevant terms italicized above in § 304.012 are expressly defined by statute in Chapter 301 of the Revised Statutes of Missouri. There appears to be no dispute that the Marceline, Missouri, street upon which the collision occurred was a "road or highway." [7] The issue concerns whether or not the riding lawn mower was a "motor vehicle" as used in § 304.012.

Section 301.010(33) defines "motor vehicle" for purposes of § 304.012 as "any self-propelled vehicle not operated exclusively upon tracks, except farm tractors." This definition has essentially two elements: (1) self-propelled and (2) vehicle. There does not appear to be any dispute that the riding lawn mower that Daniel was operating is "self-propelled" and is not operated exclusively upon tracks or excepted from the definition. Thus, we focus on whether the lawn mower is a "vehicle" as used in this section.

Section 301.010(64) defines "vehicle" as: any [1] mechanical device on wheels, [2] designed primarily for use, or [3] used, on highways, [4] except motorized bicycles, vehicles propelled or drawn by horses or human power, or vehicles used exclusively on fixed rails or tracks, or cotton trailers or motorized wheelchairs operated by handicapped persons.

Applying the facts of this case to the above-enumerated elements of the "vehicle" definition, the lawn mower was a mechanical device on wheels, so [1] is satisfied. The mower was not "designed primarily for use ... on highways" under

---

7. Section 301.010(19) defines "highway" as "any public thoroughfare for vehicles, including state roads, county roads and public

streets, avenues, boulevards, parkways or alleys in any municipality."

[2]. However, [2]—"designed primarily for use"—is separated from [3]—"used"— by the disjunctive "or," "which in its ordinary sense marks an alternative which generally corresponds to the word 'either.' "[8]  *Council Plaza Redevelopment Corp. v. Duffey*, 439 S.W.2d 526, 532 (Mo. banc 1969) (quoting Crawford, *Statutory Construction*, § 188).   Thus, if the lawn mower was *either* "designed primarily for use" *or* "used" on a road or highway, it will fit within this definition.   In this case, when the collision occurred, the lawn mower was being "used[] on a highway," and the lawn mower does not fall within one of the exceptions to § 301.010(64)'s "vehicle" definition.  Thus, the riding lawn mower was a self-propelled mechanical device on wheels used on a highway under §§ 304.010(33) and (64).

We note that there are several statutes which separately define "motor vehicle" for various purposes, and what may be considered a "motor vehicle" for one statute may not be considered a "motor vehicle" for another.[9]  However, we need not discuss in detail all of the possible statutory interpretations thereof.   Considering the plain and clear meaning of the terms used in the applicable definitional statutes, as would be understood by a person of ordinary intelligence, we find that the lawn mower is a "motor vehicle" for purposes of § 301.010(33).  Consequently, we conclude for purposes of this case that Daniel was operating the lawn mower as a "motor vehicle" on the roads and highways of this state, so he was obligated under § 304.012 to "drive the [lawn mower] in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and [to] exercise the highest degree of care."  The trial court erred in not instructing the jury accordingly.[10]  Because a jury could have found that Daniel did not exercise the highest degree of care and was, therefore, negligent while at the same time finding that Daniel did exercise ordinary care as instructed, the instructional error prejudiced Derrick.   Thus, reversal for a new trial is required.

Point I is granted.

## Point II

In his second point on appeal, Derrick contends that the trial court erred in refusing to submit his proffered instructions G and E on his claim against Gary and Brenda Riggs.

The Riggses' counsel extensively objected to these instructions, and the trial court refused them because they did not follow *Stonger I* and *National Dairy Products Corp. v. Freschi*, 393 S.W.2d 48, 54 (Mo. App. E.D.1965) (superseded by statute on

---

8.  When originally defined under § 301.010, the term "vehicle" included only the terms "primarily for use on highways."  The "or used" portion of the definition at issue was enacted in the second regular session of the 84th General Assembly in 1988 with another version of § 301.010, which had a different effective date.  The 1989 amendment merged both versions of this section as enacted in 1988, by incorporating 1988 changes in the version of this section as enacted in 1989.  The changes included the addition of "or used" into the definition of "vehicle."

9.  *See, e.g., Trailiner Corp. v. Dir. of Revenue*, 783 S.W.2d 917, 921 (Mo. banc 1990) (explaining that "[i]n [the court's] perusal of [then] current statutes," [it found] the term "motor vehicle" [was] specifically defined no less than ten times through the various chapters, which statutes it detailed in a footnote).

10.  We note that if the claim of Derrick's contributory negligence in the operation of his bicycle, which was not an issue in this appeal, is again submitted to the jury upon retrial, the parties are directed to consult *Root*, 981 S.W.2d at 655–56, for direction with regard to instructing as to Derrick's negligence.

other grounds as stated in *Allison v. Sverdrup & Parcel and Assocs., Inc.*, 738 S.W.2d 440 (Mo.App. E.D.1987)). While we agree that the instructions were not models of perfection, because the case is being remanded for a new trial, we do not feel a protracted discussion of the proposed instructions' flaws is warranted. The issue is rendered moot given our disposition on Point I. We are not in a position to speculate whether or not sufficient evidence will be admitted to support specific instructions upon retrial. That will be an issue for the trial court to decide in the new trial. Though we are confident that the instructional problems will not recur, we strongly advise the parties and the court to revisit *Stonger I* and *National Dairy*, for assistance in properly formulating the instructions if Derrick's negligence claim against the Riggses is properly supported by the evidence and submitted to the jury.

**Point III**

In his third and final point on appeal, Derrick contends that the trial court erred in refusing to submit his proffered instruction H on his claim against Gary and Brenda Riggs, "because the jury could well have granted punitive damages against the [defendants]."

Again, we are unable to speculate what evidence Derrick will offer at the new trial, so the propriety of the punitive damage instruction is moot. We do wish to note, however, that with regard to the first trial at issue, not only have the parties conceded that there was no showing of intentional conduct by Daniel, but the jury attributed zero percent fault to Daniel. In order to establish reversible error related to the trial court's refusal to instruct on punitive damages, Derrick must show that he suffered prejudice as a result of the alleged error. *Jordan v. Abernathy*, 845 S.W.2d 86, 88 (Mo.App. E.D.1993). In this case, the jury found in favor of Daniel, so it never reached the issue of damages. Even if we were to find the trial court erred in refusing the punitive damages instruction, Derrick failed to show any prejudice. *See id.* (explaining with regard to alleged trial court error in failing to instruct on punitive damages that "[n]o prejudice arises if the jury never reached the issue claimed to be the source of prejudice").

**Conclusion**

Because the trial court erred in failing to instruct the jury that Daniel owed the "highest degree of care" under § 304.012 in operating the riding lawn mower upon the public street, rather than "ordinary care" as instructed, reversal for a new trial is required.

EDWIN H. SMITH and NEWTON, JJ., concur.