STATE of Missouri, Respondent,

v.

David DIENSTBACH, Jr., Appellant.

No. ED 93837.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 15, 2010.

Harry M. Swingle, John N. Koester, Jackson, MO, for Appellant.

Jeffrey P. Dix, Jackson, MO, for Respondent.

## OPINION

GEORGE W. DRAPER III, Judge.

This is an interlocutory appeal filed by the State of Missouri pursuant to Section 547.200.1(3) RSMo (2000)[1] challenging the trial court's judgment sustaining David W. Dienstbach's (hereinafter, "Defendant") motion to suppress. The State raises one point on appeal, arguing the trial court erred in sustaining the motion to suppress in that the Missouri State Highway Patrol (hereinafter, "the MHP") trooper had jurisdiction and authority to make a traffic stop on a city street when he observed Defendant violating a state traffic law. We reverse and remand.

On May 31, 2009, Trooper Ron Eakins (hereinafter, "Trooper Eakins") was on patrol at 1:24 a.m. in the City of Cape Girardeau, near the intersection of Perry Street and New Madrid Street. Trooper Eakins

---

1. All statutory references are to RSMo (2000) unless otherwise indicated. Section 547.200.1(3) permits the State, through the prosecuting attorney's office, to take an appeal from a judgment that results in the suppression of evidence.

observed a Ford F–250 truck driving "completely on the wrong side of the road." Trooper Eakins watched the truck approach the intersection and did not believe the truck was going to come to a stop. However, when the driver of the truck saw Trooper Eakins in a marked patrol vehicle, he "slammed" on his brakes.

The truck continued traveling down New Madrid Street on the wrong side of the street, prompting Trooper Eakins to activate his emergency lights to pull over the truck. Trooper Eakins made a U-turn on Perry Street to follow the truck, while the driver of the truck pulled into a private driveway and turned off the truck's headlights. Trooper Eakins believed the driver did this in order to avoid him.

Trooper Eakins pulled up behind the truck and made contact with the driver, who was identified as Defendant. Trooper Eakins immediately noticed an odor of alcohol when speaking to Defendant, his speech was slurred, and his eyes were red, glassy, bloodshot, and watery. Trooper Eakins asked Defendant to step out of the vehicle while he called for assistance because there were four other individuals inside the truck.

Defendant was charged with four misdemeanor counts and one infraction as a result of the stop: (1) driving while intoxicated, Section 577.010; (2) driving without a valid license, Section 302.020; (3) possession of an intoxicating liquor by a minor, Section 311.352; (4) failing to register a motor vehicle, Section 301.020; and (5) failing to wear a seatbelt, Section 307.178. Defendant filed a motion to suppress evidence alleging the traffic stop lacked probable cause because Trooper Eakins and Defendant were acquainted and Defendant alleged Trooper Eakins "simply wanted to check things out" when he stopped him. Defendant filed an amended motion to suppress the day before the hearing, stating

Trooper Eakins "had no authority to pull [Defendant] over on a city street for violation of a city ordinance" as an additional ground for relief.

At the hearing, the parties focused on the legality of the stop and did not address or present any evidence gathered after Defendant was asked to exit the vehicle. Trooper Eakins was the sole witness to testify at the hearing. At the conclusion of his testimony, Trooper Eakins stated Defendant committed the driving violation on a city street, but stated, "It's still classified as a highway." The trial court clarified with Trooper Eakins that the violation occurred on a city street, rather than a county road or state highway.

In its judgment sustaining Defendant's motion, the trial court found Defendant was stopped on a city street, as opposed to a county road or state highway, and Defendant was not committing any felony charge at the time of the stop. The trial court noted there was no evidence or testimony presented that a member of the local police department had requested Trooper Eakins assist in any investigation that was ongoing or presently occurring. The trial court found Defendant's arrest was unlawful and suppressed Defendant's statements, the field sobriety test results, the breathalyzer results, and all other evidence obtained by Trooper Eakins during and after the stop. The State filed this interlocutory appeal.

When reviewing a trial court's ruling on a motion to suppress, we must determine whether the decision is supported by substantial evidence. *State v. Johnson*, 207 S.W.3d 24, 44 (Mo. banc 2006); *State v. Ross*, 254 S.W.3d 267, 272 (Mo.App. E.D. 2008). We will consider all evidence and reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Id.* We defer to the trial court's factual findings and credibility determina-

tions. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007); *State v. Dickson*, 252 S.W.3d 216, 220 (Mo.App. E.D.2008). We will reverse a trial court's ruling on a motion to suppress only if the decision is clearly erroneous and leaves us with a definite and firm impression that a mistake has been made. *State v. Dixon*, 218 S.W.3d 14, 18 (Mo.App. W.D.2007).

■ In its sole point on appeal, the State argues the trial court clearly erred in granting Defendant's motion to suppress. The State claims Trooper Eakins had the jurisdiction and authority to make a traffic stop on a city street when he viewed Defendant violating a state law, and as such, Defendant's arrest was legal.

■ Chapter 43 of the Missouri Revised Statutes governs the MHP. Section 43.025.1 provides the primary purpose of the MHP "is to enforce the traffic laws and promote safety upon the highways." "Highway" is not defined for purposes of this chapter. *Cf.* Section 43.010. Section 43.160 lists the duties of the MHP, which include policing "the highways constructed and maintained by the commission." Defendant argues this language defines what constitutes a "highway" and limits the MHP's jurisdiction to only "highways constructed and maintained by the commission," prohibiting the troopers from policing city streets in local municipalities. We disagree.

This Court engaged in a comprehensive discussion of the definition of "highway" in *Covert v. Fisher*, 151 S.W.3d 70 (Mo.App. E.D.2004). In *Covert*, we affirmed a driver's license suspension for driving a golf cart while intoxicated on the streets of a private subdivision. *Id.* at 72. The driver argued the golf cart was not a motor vehicle because golf carts are not used on highways. *Id.* at 74. After holding the golf cart was a motor vehicle for purposes of Chapter 302, we considered whether a street in a private subdivision was encompassed within the definition of "highway." *Id.* After a thorough statutory and precedential analysis, this Court held a privately owned street was considered a "highway" as the term was used in Chapter 302 when there is evidence the streets are open for use and used by the public. *Id.* at 77.

Without repeating the extensive reasoning contained within *Covert*, several key points from that holding guide our analysis here. First, *Covert* noted, "Over the years, as the legislature enacted more expanded provisions governing motor vehicles and separated these provisions into different chapters, it continued to define 'highway' in identical language" as used in its inception since 1921. *Id.* at 74–75. Second, *Covert* discussed the first Missouri Supreme Court case to construe the term "highway", which held "highway was used in the statute 'in its popular rather than its technical sense, and was intended to include all highways traveled by the public, regardless of their legal status.'" *Id.* at 75 (*quoting Phillips v. Henson*, 326 Mo. 282, 30 S.W.2d 1065, 1068 (1930)); *see also State v. Dunn*, 147 S.W.3d 75, 78 (Mo. banc 2004). Thus, the word "highway" as construed in *Phillips* applied to "any road of the state where the public is accustomed to travel." *Covert*, 151 S.W.3d at 75. Finally, *Covert* found the legislature's subsequent reenactment of the statutory definition of "highway" using the same language construed by the Missouri Supreme Court in *Phillips* presumed such construction was contemplated by the legislature. *Id.* at 77.

Turning to the case at bar, Defendant's reliance on Section 43.160 to limit the parameters of the MHP's jurisdiction over the roadways to only "highways constructed and maintained by the commission" would constrain the MHP to the point of rendering it virtually powerless. Further,

this construction is contradictory to our holding in *Covert* construing the definition of "highway" to include all highways traveled by the public, regardless of their legal status.

Moreover, Defendant's construction of Section 43.160 is at odds with other Chapter 43 provisions which enumerate the powers of the MHP to investigate and arrest individuals. For instance, Section 43.180 states MHP members "shall have full power and authority . . . in the arrest of anyone violating *any law* in their presence." Section 43.190 grants MHP members the authority to "arrest . . . any person detected by him in the act of violating *any law of this state,*" Section 43.195 provides MHP members with the explicit authority to "arrest on view, and without a warrant, any person he sees violating or who he has reasonable grounds to believe has violated *any law of this state relating to the operation of motor vehicles.*" Likewise, Section 544.216 explicitly empowers any MHP member to "arrest on view, and without a warrant, any person the officer sees violating or who such officer has reasonable grounds to believe has violated *any law of this state, including a misdemeanor or infraction . . .*" (Emphasis added to all provisions).

Thus, it is clear Trooper Eakins was acting within his jurisdiction when patrolling the city streets of Cape Girardeau. He was empowered to investigate or arrest any individual he observed violating the law of this state, including misdemeanors, infractions, and state laws relating to the operation of motor vehicles, not merely felonies that occur on "highways constructed and maintained by the commission" as found by the trial court below. Moreover, Trooper Eakins was not required to seek permission or authorization from any local law enforcement official before initiating the stop.

Turning to the legality of the stop, an analogous argument to the one Defendant raises here was rejected in *State v. Moore,* 271 S.W.3d 641 (Mo.App. S.D.2008). In *Moore,* the driver was stopped by a MHP trooper when he failed to signal when making a left turn onto a county road. *Id.* at 642. The driver appeared intoxicated and was convicted of driving while intoxicated, a class A misdemeanor. *Id.* at 641–42. On appeal, the driver argued the trial court erred in denying his motion to suppress evidence obtained during the traffic stop in that the evidence was the result of an unlawful seizure. The driver argued Section 304.019.1(3) requires drivers to signal to make a left turn only on "highways constructed or maintained by the state highway and transportation commission . . .", and here, the failure to signal occurred on a county road. *Id.* at 642. After examining the definitions of "roadway" and "state highway", the Southern District turned to Section 304.025.1, the section defining the term "highway" whenever the term is used in Section 304.019.1(3). The court noted Section 304.025.1 defined "highway" as "any public road or thoroughfare for vehicles, including state roads, *county roads,* and public streets, avenues, boulevards, parkways or alleys in any municipality." *Id.* at 643. Therefore, a county road was contained within the statutory definition of "highway" as applied to the traffic offense, and as such, the traffic stop was lawful. *Id.*

Similarly, in the case at bar, Section 304.015.2 requires "[u]pon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway . . ." except in certain circumstances which do not apply here. For purposes of this section, "highway" is defined as "any public thoroughfare for vehicles, including state roads, county roads, and public streets, avenues, boulevards,

parkways, or alleys in any municipality." Section 301.010(19). It is undisputed Trooper Eakins observed Defendant driving on the wrong side of a city street, which is what prompted the traffic stop. As stated previously, a city street falls within the definition of a "highway" per the holding in *Covert* and for purposes of Section 304.015.2. "A routine traffic stop based upon an officer's observation of a violation of state traffic laws is a reasonable seizure under the Fourth Amendment." *Sund*, 215 S.W.3d at 723. Therefore the traffic stop was lawful.

■ With respect to the legality of the arrest, the record reflects Trooper Eakins observed Defendant violating Section 304.015.2, a state traffic law, by driving on the wrong side of a city street. After stopping Defendant, Trooper Eakins indicated he immediately noticed Defendant's eyes were red, glassy, bloodshot, and watery, his speech was slurred, and there was a strong odor of intoxicants coming from his breath as he spoke. After administering field sobriety tests, Trooper Eakins determined Defendant to be intoxicated and arrested him.

Section 43.190 authorized Trooper Eakins to "arrest . . . any person detected by him in the act of violating any law of this state." Section 43.195 likewise granted Trooper Eakins explicit authority to "arrest on view, and without a warrant, any person he sees violating or who he has reasonable grounds to believe has violated any law of this state relating to the operation of motor vehicles." Contrary to the trial court's ruling, nothing in either of these statutes confines Trooper Eakins' authority to arrest an individual for felony charges only, in that these statutes expressly state the authority to arrest extends to a violation of "*any* law of this state." Indeed, Trooper Eakins could have relied on Section 544.216, which spe-cifically empowered him to "arrest on view, and without a warrant, any person the officer sees violating or who such officer has reasonable grounds to believe has violated any law of this state, *including a misdemeanor or infraction* . . ." Here, Trooper Eakins had reasonable grounds to believe Defendant violated at least one state law relating to the operation of a motor vehicle prior to the stop, and more violations became apparent after the stop. Thus, Trooper Eakins was statutorily authorized to arrest Defendant for these violations, even if these violations were merely misdemeanors or infractions.

Based on the foregoing, we find the trial court's judgment sustaining Defendant's motion to suppress was clearly erroneous given that the traffic stop and resulting arrest were lawful. *State v. Simmons*, 186 S.W.3d 418, 423 (Mo.App. S.D.2006). The State's point on appeal is granted. We reverse the trial court's judgment sustaining Defendant's motion to suppress and remand for further proceedings consistent with this opinion.

KURT S. ODENWALD, P.J., and GARY M. GAERTNER, JR., J., concur.